## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

_____

CARMEN TORRES,

<em>Plaintiff(s),</em>

- against –                                             Civil Action No. 17-CV-4109

GUTMAN, MINTZ, BAKER & SONNEFELDT LLP,     **COMPLAINT AND JURY**
EDGARDO L. BALDINUCCI, A/K/A ED BALDINUCCI,   **DEMAND**
KATHLEEN E. NOLAN,
YEVGENIYA MUSHEYEVA,
BUDDY EQUITIES LLC,

<em>Defendant(s).</em>

_____

### COMPLAINT

1.   The Plaintiff Carmen Torres (hereinafter "Plaintiff" or "Ms. Torres"), by her attorneys The Legal Aid Society, for her Complaint against Defendants, Gutman, Mintz, Baker & Sonnenfeldt, P.C. (hereinafter "GMBS"), Edgardo Baldinucci, Kathleen Nolan, Yevgeniya Musheyeva, and Buddy Equities, LLC, alleges, upon information and belief, as follows:

### INTRODUCTION

2.   This is an action for Defendants GMBS, Ed Baldinucci, and Kathleeen Nolan's violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692, *et seq*., and New York Judiciary Law (hereinafter "NYJL") § 487, and for all Defendants' violations of the New York General Business Law (hereinafter "GBL") § 349, *et seq*. Plaintiff seeks redress for unlawful practices in the collection of alleged rental arrears relating to her tenancy at 15 Crooke Avenue, Apartment 5J, Brooklyn, NY 11226 .

1

3.   Defendants GMBS, Ed Baldinucci, and Kathleen Nolan violated the FDCPA by repeatedly filing improper nonpayment proceedings against Ms. Torres, by making false and deceptive representations in their demand letters and eviction pleadings that Ms. Torres owed rental arrears to her landlord that she did not owe, by failing to perform meaningful attorney review of her file, and by failing to provide her with the FDCPA's mandatory disclosures in their initial communications, thereby depriving her of the opportunity to dispute the debt. These Defendants knowingly made false representations to the Kings County Housing Court and to Ms. Torres. All Defendants violated GBL § 349 by repeatedly filing lawsuits and pursuing collections attempts for rental arrears that Ms. Torres did not owe. To the least sophisticated consumer, these collection demands and the threat of eviction would signal that Defendants were legally entitled to collect the sums demanded or to evict Ms. Torres and her family, even when they were not.

4.   Ms. Torres seeks statutory damages, actual damages, treble damages, punitive damages, injunctive relief, declaratory relief, costs and attorney fees for Defendant's violations of the FDCPA, GBL § 349, NYJL § 487, and any other relief that the court deems fair and equitable.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6.   This Court has supplementary jurisdiction over Plaintiff's claims under GBL § 349 and NYJL § 487 pursuant to 28 U.S.C. § 1367, because they share a common nucleus of operative fact with the federal claim and are so related to the federal claim as to form part of the same case or controversy under Article III of the United States Constitution.

7.   Declaratory relief is available pursuant to 28 U.S.C. § 2201 and 2202.

8.   Venue in this district is proper under 28 U.S.C. § 1391(b) because the Defendants transact business here and the conduct complained of occurred here.

## PARTIES

9.   Ms. Torres is a natural individual residing at 15 Crooke Avenue, Apartment 5J, Brooklyn, New York, in the County of Kings. Ms. Torres is a consumer as defined by 15 U.S.C § 1692a(3).

10. Defendant GMBS is a New York limited liability partnership with its principal place of business at 813 Jericho Turnpike, New Hyde Park, NY 11040. GMBS is a law firm regularly engaged in the business of collecting debts already in default by verbal and written communications and by litigating civil lawsuits for nonpayment of rent on behalf of its clients, including Buddy Equities LLC. According to its website, the firm specializes in proceedings including landlord-tenant matters, debt recovery, collection, and the recovery of funds.[1] GMBS regularly prepares and sends collection letters on behalf of its clients and attempts to collect said debts. GMBS is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

11. Defendant Ed Baldinucci is an attorney and partner with GMBS who regularly engages in the business of collecting debts already in default by various methods, which include collection letters and litigating civil lawsuits for nonpayment of rent on behalf of his clients, including Buddy Equities LLC. Ed Baldinucci maintains his office at 813 Jericho Turnpike, New Hyde Park, New York 11040. Ed Baldinucci is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

12. Defendant Kathleen Nolan is an attorney with GMBS who regularly engages in the business of collecting debts already in default by various methods, which include collection letters and litigating civil lawsuits for nonpayment of rent on behalf of her clients, including Buddy Equities LLC. Kathleen

---

[1] See Gutman, Mintz, Baker & Sonnenfeldt LLP, About Us, http://www.gmbspc.com/GMBS_InnSite.nsf/pages/Aboutus (last visited June 29, 2017).

3

Nolan maintains her office at 813 Jericho Turnpike, New Hyde Park, New York 11040. Kathleen Nolan is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

13. Defendant Yevgeniya Musheyeva is an attorney with GMBS who regularly engages in the business of collecting debts already in default by various methods, which include collection letters and litigating civil lawsuits for nonpayment of rent on behalf of her clients, including Buddy Equities LLC. Yevgeniya Musheyeva maintains her office at 813 Jericho Turnpike, New Hyde Park, New York 11040. Yevgeniya Musheyeva is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

14. Buddy Equities LLC is a New York Domestic Limited Liability Company with its principal place of business at 725 Church Avenue, Brooklyn, NY 11218. Until November 28, 2016, it was the owner of the apartment and building where Ms. Torres resides and which is the subject of the eviction proceedings that form the basis for this Complaint.

15. All Defendants regularly engage in the business of collecting rent or rental arrears by collection letters, calls, and/or in-person interactions with tenants in the subject premises. All Defendants also communicate with each other regarding the initiation of lawsuits against Ms. Torres and other tenants.

16. All Defendants transacted business in the Eastern District of New York during all times relevant to this complaint.

## STATEMENT OF FACTS RELEVANT TO THIS COMPLAINT

17. Carmen Torres has maintained a residential lease agreement for a rent stabilized apartment located at 15 Crooke Avenue, Apartment 5J, in Brooklyn, NY since approximately 2004. The building is or was during the relevant time periods owned and operated by Buddy Equities LLC and/or its successors, 15 Crooke LLC and 15 Crooke II LLC.

4

18. Ms. Torres is a severely disabled mother of three children, whose only sources of income are cash assistance from the New York City Human Resources Administration (herein after "HRA") and Food Stamps. She has been diagnosed with life-threatening medical conditions, has limited mobility, and receives home attendant care. The entirety of Ms. Torres's rent is paid by HRA's Department of Social Services (herein after "DSS"). Her rent has been paid by DSS for all relevant time periods.

19. As is commonplace, HRA makes two rental payments by direct-vendor checks each month to the landlord on behalf of Ms. Torres, each equal to half of the total month's rent. These checks are commonly referred to as the "A check" and the "B check". These checks are frequently, if not always, issued at the end of the first week of the month and the start of the third week of the month, respectively.

20. Pursuant to case law and New York public policy, public assistance recipients such as Ms. Torres are not subject to the termination of their tenancy based upon the semi-monthly issuance of the shelter "A" and "B" checks, the schedule of which is out of their control and uniform for all public assistance recipients.

21. Defendants in this action had notice of Ms. Torres' status as a public assistance recipient through rental checks made out by HRA that were received and cashed by Buddy Equities LLC and its agents and/or successor(s), business records available to all Defendants, and through personal contacts with Ms. Torres and her counsel during court proceedings.

22. In June 2014 and again in August 2016, Ms. Torres signed two-year rent stabilized lease agreements that contained a lowered preferential monthly rent of $1,714.40. During all time periods relevant to this complaint, this was Ms. Torres' contractual rental obligation.

23. Over the last two and a half years, Ms. Torres has received two buyout offers[2] from Buddy Equities and its successors, but has declined each of them. During this same time period, many other tenants, including two on her floor, have been offered buyouts.

24. In that same time period, Ms. Torres has been the subject of three eviction proceedings initiated by GMBS and Buddy Equities LLC to collect rental arrear amounts not actually owed by Ms. Torres or by HRA. In all three cases, Ms. Torres did not owe the amounts alleged in the petitions and predicate rent demand letters; in the most recent two cases, she did not owe any rent at all. In addition to commencing the legal proceedings, Defendants also attempted to collect rent through written demands for rent already paid and verbal communications in and out of court.

25. All actions described herein that were taken by employees, agents, servants, or representatives of any type for the Defendants were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

**The 2015 Proceeding Demanded Nearly Nine Times What Was Owed[3]**

26. On or about June 1, 2015, Buddy Equities LLC and GMBS served a "Three Day Demand for Rent", dated May 28, 2015, upon Ms. Torres. (Exhibit A).[4] The rent demand letter sought rental arrears in the amount of $709.95 for November 2014, and $1,714.40 per month from December 2014 through May 2015, for a total of $10,996.35. Id. The letter threatened eviction proceedings upon failure to pay within 3 days. Id. It was addressed from Buddy Equities LLC and prepared by GMBS.

---

[2] The practice of landlords offering buyouts to longtime tenants protected by rent regulation has become so common, and often abusive, that New York City Council passed three bills in 2015 aimed at regulating these offers to decrease tenant harassment. *See* Local Laws of the City of New York No. 81, 82, and 83.

[3] Demand letters and petitions sent prior to the one-year period preceding this Complaint serve as a basis for the GBL § 349 and NYJL § 487 claims only.

[4] All exhibits attached to this complaint and documents referenced in this complaint are incorporated by reference in their entirety.

Id.  The letter did not state that Ms. Torres had a right to dispute the debt or request verification of the debt. Id.

27. On or about June 8, 2015, Defendants Buddy Equities LLC, Yevgeniya Musheyeva, and GMBS initiated a non-payment eviction proceeding against Ms. Torres in the Housing Part of the Civil Court of the City of New York, Kings County, under the index number L&T 073284/2015. (Exhibit B). The petition alleged she owed rental arrears in the amount of $1,628.80 for December 2014, and $1,714.40 per month from January 2015 through June 2015, for a total of $11,915.20 plus attorney fees. Id. The amounts demanded in the petition arose out of a transaction which was primarily for personal, family, or household purposes.  GMBS served Ms. Torres with a Notice of Petition and Petition for the same nonpayment proceeding between June 8 and 15, 2015.

28. By signing, filing and serving the verified petition, Yevgeniya Musheyeva and GMBS impliedly represented to Ms. Torres that an attorney had done a meaningful review of the facts and circumstances of her account. The petition required Yevgeniya Musheyeva to affirm under penalty of perjury that her belief as to all matters in the petition that were not stated upon personal knowledge was based on statements and/or records provided by the petitioner or its agents that were contained in the attorney's office. Id.

29. On August 20, 2015, through a Motion for Summary Judgment, Ms. Torres' attorney provided Defendants and the Kings County Housing Court with HRA records demonstrating that DSS had paid Ms. Torres' rent directly to Buddy Equities LLC in the amount of $1,591.10 for every month stated in the rent demand letter and complaint. (Exhibit C). All checks were cashed by Buddy Equities LLC prior to serving the petition and the predicate rent demand on Ms. Torres. Id.

30. Despite the documentary evidence provided in August 2015, Defendants continued to litigate the case for another five months.

31. On or about January 29, 2016, a Stipulation of Settlement was so ordered by Judge Bruce E. Scheckowitz, which determined Buddy Equities LLC had received $1,591.20 in rent for every month mentioned in Plaintiff's rent demand letter and complaint. (Exhibit D). Defendants' petition demanded $10,682.20 more from Ms. Torres than she actually owed at the time it was filed.

32. Defendant's claims of nonpayment of the entire rent of $1,714.40 for all relevant months was false, deceptive and misleading, and demonstrate that Defendant GMBS failed to do any meaningful attorney review prior to commencing the proceeding. Defendants had ample prior notice that Ms. Torres did not owe the amount alleged through the timely rent payments they received from DSS for the relevant months and through their own tenant rent ledger. Nevertheless, Defendants misrepresented the amount of the debt to Ms. Torres and to the Court.

***The July 2016 Proceeding: Discontinued Except as to Forthcoming B Check***

33. On or about July 15, 2016, Buddy Equities LLC and GMBS served a "Three Day Demand for Rent" upon Ms. Torres. (Exhibit E). The rent demand letter sought rental arrears that had already been paid by DSS and threatened eviction upon failure to pay within three days. Upon information and belief, the letter did not state that Ms. Torres had a right to dispute the debt or request verification of the debt.

34. On or about July 26, 2016, Defendants Buddy Equities LLC, Kathleen Nolan, and GMBS initiated a nonpayment eviction proceeding against Ms. Torres in the Housing Part of the Civil Court of the City of New York, Kings County under the index number L&T 079069/2016. (Exhibit F). The petition alleged she owed rental arrears in the amount of $1,714.40 per month for June and July 2016, $1,147 in late fees, and attorney fees. Id. The amounts demanded in the petition arose out of a transaction which was primarily for personal, family, or household purposes. On or about August 2,

8

2016, GMBS served Ms. Torres with a Notice of Petition and Petition for the same nonpayment proceeding. Id.

35. By signing, filing and serving the verified petition, GMBS and Kathleen Nolan impliedly represented to Ms. Torres that an attorney had done a meaningful review of the facts and circumstances of her account. The petition required Kathleen Nolan to affirm under penalty of perjury that her belief as to all matters in the petition that were not stated upon personal knowledge was based on statements and/or records provided by the petitioner or its agents that were contained in the attorney's office. Id.

36. On or about August 17, 2016, a Stipulation of Settlement and Discontinuance was so ordered by Judge Marcia J. Sikowitz, upon determination that Ms. Torres' rent for June and July 2016 had been paid by DSS. (Exhibit G). The remaining rent owed for August at the time of the stipulation was scheduled to be paid by HRA's B check.

***The November 2016 Proceeding: Discontinued With Prejudice***

37. Just two months later, on or about October 19, 2016, Buddy Equities LLC and GMBS served a "Three Day Demand for Rent", dated October 12, 2016, upon Ms. Torres. (Exhibit H). The rent demand letter sought rental arrears in the amount of $1,893.63 per month for September and October 2016, for a total of $3,787.26. Id. It threatened eviction upon failure to pay within 3 days. Id. The rent demand letter was from Buddy Equities LLC and prepared by GMBS. Id. The letter did not state that Ms. Torres had a right to dispute the debt or request verification of the debt. Id.

38. On or about November 9, 2016, Defendants Buddy Equities LLC, Ed Baldinucci, and GMBS initiated a non-payment eviction proceeding against Ms. Torres in the Housing Part of the Civil Court of the City of New York, Kings County under the index number L&T 09357/2016. (Exhibit I). The petition alleged she owed rental arrears in the amount of $1,893.63 per month for October and

November 2016, for a total of $3,787.26, plus attorney fees. Id. The amounts demanded in the petition arose out of a transaction which was primarily for personal, family, or household purposes. On or about November 8, 2016, GMBS served Ms. Torres with a Notice of Petition and Petition for the same nonpayment proceeding. Id.

39. By signing, filing and serving the verified petition, Ed Baldinucci and GMBS impliedly represented to Ms. Torres that an attorney had done a meaningful review of the facts and circumstances of her account. The petition required Ed Baldinucci to affirm under penalty of perjury that his belief as to all matters in the petition that were not stated upon personal knowledge was based on statements and/or records provided by the petitioner or its agents that were contained in the attorney's office. Id.

40. On or about November 28, 2016, Buddy Equities LLC sold the apartment building to 15 Crooke LLC and 15 Crooke II LLC.

41. On December 20, 2016, through a Motion to Dismiss for failure to provide a good faith approximation of the rent owed, Ms. Torres' attorney provided Defendants and the Kings County Housing Court with certified HRA records demonstrating that DSS had, in fact, already paid Ms. Torres' rent directly to Buddy Equities LLC in the amount of $1,714.40 for the months stated in the rent demand letter and petition. (Exhibit J). All checks were cashed by Buddy Equities LLC or its agents. Id. The motion also attached a copy of Ms. Torres' lease agreement, showing that her contractual rent obligation for the months demanded was $1,714.40, not $1,893.63 as demanded by Defendants. Id.

42. On or about March 22, 2017, a Stipulation of Settlement was so ordered by Judge Jeanine Baer Kuzniewski. (Exhibit K). The stipulation discontinued the case with prejudice and confirmed that there was a "zero balance through November 30, 2016". Id.

***Defendants Repeatedly Pursued Collections for Debts They Knew or Should Have Known Had Been Paid***

43. It is the regular and repeated practice of Defendants to maliciously, willfully, recklessly, wantonly and/or negligently refuse to follow and ignore the requirements of the FDCPA, GBL § 349, and state housing laws.

44. Defendants had actual notice of what rent had been paid prior to sending rent demands and initiating nonpayment proceedings, but intentionally and unconscionably continued repeated collection attempts against Ms. Torres for rent they knew she did not and does not owe. Indeed, more often than not, Buddy Equities LLC had already cashed rental checks for the same time periods sought in the demand letters and petitions. This conduct violated the FDCPA's prohibition against unfair or unconscionable means of collecting or attempting to collect a debt, as outlined in 15 U.S.C. § 1692f.

45. Defendants' repeated collection efforts and nonpayment lawsuits against Ms. Torres, coupled with repeated buyout offers during the same time period, amounted to behavior with the natural consequence of harassing and/or abusing Ms. Torres, in violation of 15 U.S.C. § 1692d. This conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.

46. Defendants repeatedly made false and misleading representation regarding Ms. Torres' alleged debt to her, the Kings County Housing Court, and her advocates, in violation of 15 U.S.C §§ 1692e(2) and (5) and GBL § 349. They misrepresented the character and amount of her debt, the services rendered related to collecting her debt, and they took action prohibited by law because her rent was not actually in arrears when they commenced nonpayment eviction proceedings against her.

47. Defendants acted willfully and knowing in its violations of the FDCPA and GBL § 349. Despite having numerous cases discontinued in favor of Ms. Torres, Defendants continue to bring

11

meritless collection lawsuits against her. The pattern of lawsuits described in the foregoing paragraphs evidences that Defendants are in the practice of regularly refusing to meaningfully review tenants' accounts before preparing and sending demand letters and initiating lawsuits.

***Defendants GMBS, Ed Baldinucci, Kathleen Nolan, and Yevgeniya Musheyeva Failed to Perform Meaningful Review of Ms. Torres' Account and Took Actions to Deceive the Court and Ms. Torres***

48. The demand letters prepared by GMBS for delivery to Ms. Torres on July 15, 2016 and October 19, 2016 each represented to Ms. Torres that an attorney had performed a meaningful review of the facts and circumstances of her account and the representations in the written communications. Absent an express disclaimer of attorney involvement, an individualized, meaningful attorney review is required in order for a written communication to be considered "from an attorney" within the meaning of the FDCPA, 15 U.S.C. § 1692e(3).

49. The petitions filed on July 26, 2016 and November 9, 2016 more expressly indicated that the attorneys signing each petition, Kathleen Nolan and Ed Baldinucci, respectfully, had performed a meaningful attorney review. By signing the petitions, Kathleen Nolan, Ed Baldinucci, and GMBS verified under penalty of perjury that their belief as to all matters in the petition were based either upon personal knowledge or upon statements or records provided by Buddy Equities LLC.

50. Had GMBS or its attorneys actually performed a meaningful attorney review, or any adequate review of Ms. Torres' case, they would have determined that the amounts demanded were incorrect. GMBS could have, for example, obtained and reviewed its client's rent ledger to determine what amounts of rent were paid and when; reviewed the HRA records to determine what checks were sent and when they were cashed; or reviewed the prior court files from its client or from other attorneys within GMBS.

12

51. Through the verified petitions filed on June 8, 2015, July 26, 2016, and November 9, 2016, GMBS and its attorneys, Ed Baldinucci, Kathleen Nolan, and Yevgeniya Musheyeva, represented to the Kings County Housing Court and to Ms. Torres that the amounts alleged in the petition were due and owing to Buddy Equities, LLC, despite information available to them to the contrary. By filing the petitions with the court, serving them on Ms. Torres, and prosecuting the cases, GMBS and its attorneys acted to deceive the court and Ms. Torres.

***Defendants' Actions Are Consumer-Oriented and Impact Many Other Similarly Situated Consumers***

52. As of July 10, 2017, according to online New York State Unified Court System records, GMBS has more than 3,000 active landlord-tenant cases and 2,282 active civil court cases in New York. As such, GMBS' conduct and practices impact roughly 5,000 New York consumers at any given time. In the experience of the Legal Aid Society's more than 120 housing attorneys citywide, GMBS regularly prepares, serves, and files rent demands and nonpayment proceedings claiming incorrect amounts and demanding rent without a good faith approximation of the rent that is actually owed.

53. Buddy Equities LLC and its successors rent 54 units to tenants at 15 Crooke Avenue, Brooklyn, NY. Since Buddy Equities LLC purchased this property in March of 2015, The Legal Aid Society has represented several tenants in the building in nonpayment proceedings brought by Buddy Equities LLC and GMBS in which Defendants demanded an incorrect amount of rent. Upon information and belief, many tenants in the subject building have received rent demands and/or been the subject of nonpayment proceedings for misstated rental arrears. Upon information and belief, many tenants have received buyout offers contemporaneously with eviction proceedings filed against them.

13

54. Upon information and belief, Defendants routinely commit the above cited violations against numerous similarly situated consumers in New York. Tenants are routinely sued by Defendants for rental arrears in the incorrect amounts or where rent is not actually owed. The Defendants' violations of GBL § 349 and New York housing law are recurring not only against Ms. Torres, but have occurred against numerous other tenants in the past. Defendants' recurring conduct demonstrates that this is their ordinary manner of doing business.

55. By routinely suing tenants for rental arrears in incorrect amounts or where rent is not actually owed, the reasonable consumer is put at immediate risk of imminent eviction if the tenant fails to follow complicated procedures in housing court, especially where the tenant is unrepresented by legal counsel. Once a judgment of possession is entered and a warrant is obtained, an eviction may occur even over an incorrect or entirely baseless sum of alleged arrears.

56. New York City civil housing courts are courts of limited jurisdiction where summary proceedings are intended to quickly resolve landlord/tenant disputes. It is the responsibility of landlords and their law firms to properly evaluate the accuracy and appropriateness of lawsuits prior to commencing a proceeding in housing court. Unfortunately, it is the experience of the Legal Aid Society that housing court proceedings, in particular nonpayment proceedings, are frequently commenced without an accountable description of the rent owed, if any. When, as here, petitioners bring multiple frivolous nonpayment actions against the same tenant(s), a tenant's best outcome is usually to get the case dismissed. Because Ms. Torres and similarly situated tenants are unable to seek injunctive relief to enjoin Defendants from bringing future unwarranted cases, these violations are likely to continue to occur in the future.

57. Because it is the business of Defendants to collect rent and rental arrears, and because of the number of tenants that all Defendants deal with, these acts and practices cause injury and harm to the

public interest and have a broad impact on the public at large, particularly those tenants who participate in a rental assistance program. The manner in which Defendants conduct business is very likely to impact many similarly situated tenants who live in buildings owned and operated by Buddy Equities LLC and its successor(s), and/or whose landlords are represented by GMBS.

### *Defendants' Demand Letters and Communications Did Not Comply with Federal and State Law Requirements*

58. All the petitions and predicate rent demands referenced herein failed to comply with Section 711(2) of the Real Property Actions and Proceedings Law ("RPAPL") in that they failed to provide a good-faith approximation of the rent allegedly owed. There is no indication that the rent demands and/or petitions were prepared after a review of Ms. Torres' rental account.

59. None of the demand letters prepared by GMBS and sent by Buddy Equities LLC contained the disclosures required by the FDCPA in 15 U.S.C. § 1692g, nor were these disclosures provided within five days of the initial communications. These disclosures are of particular importance in this case because in each case, Defendants sought to collect more than Ms. Torres actually owed. Had GMBS provided the disclosures as mandated by law before initiating nonpayment proceedings, Ms. Torres would have had the opportunity to invoke her rights under 15 U.S.C. § 1692g(b) to send a written dispute and demand that GMS cease collections until it had verified the debt. Had she been able to do so, GMBS may have done a meaningful investigation in response and determined that she did not actually owe the rent alleged.

### *Defendants Have Cause Ms. Torres Damages By Repeated Attempts to Collect Debts Not Owed*

60. The conduct of Defendants has caused Ms. Torres damage to her reputation as a tenant and thereby her ability to move from the subject apartment and secure alternative housing; severe mental

distress and emotional anguish; actual costs associated with repeated court appearances and travel related to defending those cases; and other damages that will be presented to the trier of facts.

61. The threat of eviction through eviction proceedings is a threat of homelessness. Ms. Torres was previously evicted from this building and rendered homeless in 2012; therefore, the reality of homelessness for herself and her family is painfully clear. Given Ms. Torres' limited income, limited mobility, the scrutiny by prospective landlords to tenants with eviction proceedings on their tenant screening reports, and the extremely low vacancy rate for apartments in New York City, the threat of eviction is particularly frightening, and Ms. Torres understands that her relocation options are likely to be extremely limited.

62. Ms. Torres has experienced increased levels of anxiety and tremendous stress as a result of the repeated lawsuits. When the first nonpayment proceeding referenced herein was filed against her, Ms. Torres felt confused and scared, and wept for days. She called her landlord repeatedly to ask why she was being threatened with eviction, at first receiving evasive answers and eventually no response to her calls. The thought of her children once again facing homelessness has led to difficulty sleeping, and Ms. Torres often finds herself awake all night until it is time to bring her youngest child to school at 7:30 A.M.

63. Because her children were so traumatized by their previous experience with homelessness, Ms. Torres has largely shouldered her own emotional distress alone, attempting to shield her children from what is happening. Despite these efforts, her children are aware of the many neighbors who are being forced out of the building. One of her daughters was once visiting a neighbor's apartment when the City Marshal arrived to evict the family. Frequent evictions around the building have compounded Ms. Torres' distress and fear that hers may be the next family to see a Marshal at the door.

16

64. The conduct of Defendants has caused Ms. Torres particular angst and mental anguish because Defendant is diagnosed with several medical conditions, and her health condition has been exacerbated by the numerous frivolous and false lawsuits. The stress has led to high blood pressure, which causes severe and frequent nosebleeds.

65. Ms. Torres is severely disabled and has extremely limited mobility. Getting up and down the stairs to her apartment is a considerable challenge for her, and she is unable to walk even one city block without assistance. She is unable to use public transportation because of the significant physical strain it imposes on her. As a result, it is a severe hardship for her, as a person with extremely limited income, to repeatedly appear in court to defend meritless lawsuits against her.

## FIRST CLAIM FOR RELIEF

**Violations of the Fair Debt Collection Practices Act**
**(as to GMBS, Ed Baldinucci, and Kathleen Nolan only)**

66. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

67. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e*); see also Hamilton v. United Healthcare of La., Inc.,* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

68. The rent demands and petitions prepared by Defendants GMBS, Kathleen Nolan, and Ed Baldinucci and given to Ms. Torres were "communications" related to a "debt" as defined by 15

U.S.C. §§ 1692a(2) and 1692a(5) of the FDCPA. Their actions enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

69. By sending repeated demand letters and initiating repeated meritless lawsuits demanding that Ms. Torres pay rent she does not actually owe or face eviction; failing to properly notify Ms. Torres of the actual amount of her debt, if any, and her rights under the law; and intentionally misrepresenting the status of Ms. Torres' account to her and to the Court, Defendants GMBS, Kathleen Nolan, and Ed Baldinucci violated the following sections of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g.  The Defendants' violations include, but are not limited to, the following:

a.   Engaging in conduct, the natural consequence of which is to harass, oppress or abuse any person;

b.   Using unfair or unconscionable means to collect or attempt to collect a debt;

c.   Using false, deceptive or misleading representations or means in connection with the collection of a debt;

d.   Falsely misrepresenting the character, amount or legal status of the debt;

e.   Misrepresenting the services rendered or compensation which may be lawfully received by a debt collector;

f.   Threatening to take and actually taking action prohibited by law;

g.   Failing to provide in its initial communications information about the accurate amount of the debt, if any, and Ms. Torres' right to dispute and request verification of the debt; and

h.   Collecting or seeking to collect amounts (including any interest, fee charge, or expense incidental to the principal obligation) not expressly authorized by the agreement crediting the debt or permitted by law.

70. As a result of the above violations of the FDCPA, GMBS, Kathleen Nolan, and Ed Baldinucci are liable to Ms. Torres for her actual damages, statutory damages, costs and attorney fees.

**SECOND CLAIM FOR RELIEF**

**Violations of New York General Business Law § 349**

71. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

72. New York law prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnish of any services in this state…" N.Y. G.B.L. § 349(a).

73. Under G.B.L. § 349, prohibited acts and practices must be consumer-oriented and have a broader impact on consumers at large, in that they are recurring, or they potentially affect similarly situated consumers.

74. Defendants' deceptive acts and practices include but are not limited to:

    a.  Repeated false representations that Ms. Torres owed rental arrears when she did not;

    b.  Repeated false representations as to the amount of rental arrears owed;

    c.  False representations as to Ms. Torres' contractual rent obligation;

    d.  Failure to disclose in written communications with Ms. Torres, legal pleadings, and statements to the court that Defendants had received and cashed rental checks for the months demanded; and

    e.  Failure to exercise due diligence and perform minimal review of the account, much less meaningful attorney review, prior to engaging in collection activities and commencing repeated nonpayment proceedings against Ms. Torres.

75. By engaging in a pattern and practice of sending repeated improper demand letters and initiating repeated lawsuits demanding that Ms. Torres pay rent not actually owed or face eviction, as

set forth above, Defendants have performed deceptive acts or practices in the conduct of its business in New York state.

76. Defendants' deceptive acts and practices, as enumerated above, are misleading to a reasonable consumer in a material way.

77. Defendant's acts and practices were consumer-oriented, the acts and practices were misleading in a material respect and Ms. Torres has suffered compensable harm as a direct and proximate result, as detailed in Paragraphs 60-65, *supra*.

78. For these reasons, Plaintiff is entitled to injunctive and declaratory relief, and is further entitled to recover, actual damages, treble damages, and punitive damages, together with costs and attorney's fees, pursuant to GBL § 349(h).

### THIRD CLAIM FOR RELIEF

### Violations of New York Judiciary Law § 487
**(As to GMBS, Ed Baldinucci, Kathleen Nolan, and Yevgeniya Musheyeva only)**

79. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

80. Defendants, GMBS, Ed Baldinucci, Kathleen Nolan, and Yevgeniya Musheyeva, violated § 487 in their systematic intentional misrepresentations to the court and Ms. Torres. These Defendants made repeated misrepresentations for the purpose of deceiving the Court, Ms. Torres, and other consumers, least sophisticated or otherwise, into believing that the consumers owe the rental arrear amounts demanded in their rent demand letters, court pleadings and other representations relating to the court proceedings. Likewise, the purpose of these misrepresentations was to deceive the court that

20

now-Defendants were entitled to judgment and costs of court, when they were not. These intentional misrepresentations to Plaintiff and similar misrepresentations to other consumers made relating to legal proceedings constitute an attorney's extreme and chronic pattern of legal delinquency.

81. The violations of § 487 by Defendants inflicted damages upon Ms. Torres as detailed above.

82. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the Defendants' violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

## DEMAND FOR JURY TRIAL

83. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff respectfully demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

84. WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

    a.  Injunctive relief barring Defendants from pursuing future evictions without first performing meaningful review of the account and verifying that rental arrears are, in fact, owed, and that demands are made for the proper amounts;

    b.  A declaration that all Defendants have committed the violations of law alleged in this action;

    c.  An order requiring Defendants to serve The Legal Aid Society with a rent ledger detailing the most recent six months of activity on Ms. Torres' account prior to serving any three day demand letter;

    d.  An order enjoining and directing Defendants to cease violating G.B.L. § 349 *et seq.*;

    e.  Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), N.Y. G.B.L. § 349(h), and N.Y.J.L. § 487;

f.   Statutory damages pursuant to 15 U.S.C. § 1692k and N.Y. G.B.L. § 349(h);

g.   Punitive damages pursuant to N.Y. G.B.L. § 349;

h.   Treble damages pursuant to N.Y. G.B.L. § 349(h) and N.Y.J.L. § 487;

i.   Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k, N.Y. G.B.L. §
349(h), and N.Y.J.L. § 487;

j.   Prejudgment and post judgment interest as allowed by law;

k.   Such other and further relief as may be just and proper.


Dated: <u>July 11, 2017</u>
        Jamaica, NY

                              Respectfully Submitted,



                              _____/s/_____
                              Diane N. Johnston, Esq.
                              Of Counsel to Seymour W. James, Jr., Attorney-in-Chief
                              THE LEGAL AID SOCIETY
                              153-01 Jamaica Avenue, Suite 202
                              Jamaica, New York 11432
                              Phone: (718) 883-8134
                              Fax: (646) 449-6905
                              Email: DJohnston@legal-aid.org
                              *Counsel for Plaintiff, Carmen Torres*

22